## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                       No. CR 09-3207 JB

DAVID AGUILAR,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant David Aguilar's Motion for Disclosure of Identity of Confidential Informant, filed January 18, 2010 (Doc. 54). The Court held a hearing on April 27, 2010. The primary issues are: (i) whether the Court should order Plaintiff United States of America to disclose the identity of a confidential informant ("CI") who was instrumental in the sting operation in which Defendant David Aguilar and co-Defendants Anthony Mirabal and Kevin Garner were apprehended; and (ii) whether the Court should order the United States to disclose a substantial amount of additional information about the CI that Aguilar seeks. Although the Court finds that the law requires the United States to disclose the identity of the CI under the facts of this case, the Court agrees that the United States is not required to disclose anything other than the CI's identity at this stage in the criminal proceeding, and that disclosure will be for attorneys' eyes only. The Court thus grants in part and denies in part Aguilar's motion.

## FACTUAL BACKGROUND

In October 2009, officers with the Middle Rio Grande Valley Narcotics Task Force initiated an investigation into allegations of narcotics trafficking by Mirabal. According to task-force

officers, at their direction, a CI set up a purchase of approximately two kilograms of cocaine from Mirabal.  The CI met with Mirabal, Garner, and Aguilar on October 15, 2009 at a Church's Chicken restaurant in Albuquerque, New Mexico, to consummate the sale of the cocaine.  The CI was present at all times during the drug transaction.  The CI, Mirabal, Aguilar, and Garner drove from the Church's Chicken parking lot to the CI's residence.

Mirabal, carrying a backpack containing the cocaine, and the three other individuals entered the CI's residence.  Unbeknownst to the Defendants, Detective Villegas was already inside the residence in an undercover capacity.  Aguilar allegedly stood guard at the rear door or the residence, and Garner stood guard at the front door.  Once Mirabal removed the cocaine from the backpack and placed it on a table where Villegas could see it, Villegas gave the signal to officers outside the residence to enter and make the arrest.

When officers entered the home, Garner dropped to the ground and surrendered.  Mirabal attempted to flee, but was apprehended at the back door of the CI's residence.  Aguilar successfully escaped the residence and fled approximately one-hundred yards before being apprehended.  At the time of arrest, Mirabal had in his possession a handgun and approximately $8,900.00 in cash. Garner likewise had a handgun in his pants pocket.

## PROCEDURAL BACKGROUND

On November 4, 2009, Aguilar and the co-Defendants were indicted for: (i) possession with intent to distribute more than 500 grams of cocaine; (ii) carrying a firearm in relation to a drug-trafficking crime; and (iii) conspiracy to possess with intent to distribute more than 500 grams of cocaine.  See Indictment, filed November 4, 2009 (Doc. 30).  Aguilar moves the Court, pursuant to Kyles v. Whitley, 514 U.S. 419 (1995), Giglio v. United States, 405 U.S. 150 (1972), Brady v. Maryland, 373 U.S. 83 (1963), and other authority, for an order requiring the United States to

produce any informants, and to provide the following information and documents regarding the informants and/or co-Defendants whom the United States, state, or local law-enforcement agencies used in this case, including: (i) name and address; (ii) case number and name of the prosecutions in which the informants used in this case previously have been used as confidential informants or informants; (iii) the case names and numbers of any trials or evidentiary hearings at which the informants have testified concerning: (a) his or her prior criminal activity; (b) payments or rewards provided to him or to her by the government or his or her handlers; and (c) efforts made to induce others to participate in criminal activity or other purported law-enforcement related matters; (iv) any ledger, sheet, or other document that details the sums paid the confidential informants or their families in this and other cases in which these informants assisted the government, and the purpose of each such payment; (v) any information, regardless whether memorialized in a memorandum, agent's report, or other writing, regarding the promises of immunity, leniency, preferential treatment, or other inducements made to the informants, or to any other family members, friends, or associates of the informants, in exchange for the informants' cooperation, including the dismissal or reduction of charges, assisting in matters of sentencing or deportation, or promises or expectancies regarding payments for expenses or testimony or eligibility for any reward or award; (vi) information or records concerning the notification of potential prosecution, investigation, or deportation that the government or any other law-enforcement offices made to the informants or to any members of the informants' family; (vii) any report, document, or information that details the confidential informants' criminal activities which were undertaken by him or her without the authority or approval of the government or other law-enforcement officials, but for which the government or other law-enforcement officials have elected, formally or informally, not to

prosecute; (viii) Federal Bureau of Investigation rap sheet, NCIC[1] print-out, and any other records available to the United States or to other law-enforcement offices reflecting the arrest and conviction history of the informants, including but not limited to arrests and convictions of the informants by state and federal law-enforcement authorities; (ix) information concerning the prior misconduct by the confidential informants in the performance of their role as informants, including any prior refusal of the informants to testify for or to assist the United States or the state; any prior allegation that the informants entrapped another person to commit an offense or made false statements in connection with a criminal investigation; and any prior "blackballing" of the informants by any law-enforcement agency; (x) information concerning misconduct by the informants other than in their roles as informants, including misconduct that reflects on the lack of candor, truthfulness, or law abiding character of the informants, such as uncharged criminal conduct, fraud, or dishonest and untruthful acts; (xi) information reflecting the nature and extent of assets that the informants obtained in connection with their illegal activities over the past ten years; (xii) any "personnel files" that the United States or other law-enforcement officers used in this case relating to the confidential informants, reflecting on their character for truthfulness or lawfulness; and (xiii) any government agency files or other information revealing matters relevant to the confidential informants' credibility, mental, or physical health, or narcotic or alcohol use or other dependency.  Aguilar argues that he is entitled to these materials.

---

[1] NCIC, which stands for "National Crime Information Center," is "a computerized index of criminal justice information (i.e.- criminal record history information, fugitives, stolen properties, missing persons)."  National Crime Information Center (NCIC) - FBI Information Systems, http://www.fas.org/irp/agency/doj/fbi/is/ncic.htm (last visited June 26, 2010).  "The purpose for maintaining the NCIC system is to provide a computerized database for ready access by a criminal justice agency making an inquiry and for prompt disclosure of information in the system from other criminal justice agencies about crimes and criminals."  Id.

In response, the United States argues that Aguilar fails to adequately show that being given the CI's identity would materially aid his defense. The United States then argues that Aguilar fails to show that the CI had an "integral role" in the criminal activity with which Aguilar is charged. It argues that Aguilar overstates the CI's involvement in the drug transaction and that "merely . . . introduc[ing] a drug dealer to an undercover agent" is insufficient to warrant disclosure. United States' Response to Defendant David Aguilar's Motion for Disclosure of Confidential Informant at 6, filed January 29, 2010 (Doc. 59)("Response"). Finally, the United States asserts that, even if Aguilar is entitled to know the identity of the CI, he is not entitled to the laundry-list of background information that he seeks in his motion because the United States does not intend to call the CI as a witness at trial. See Response at 7-8.

At the hearing, Erlinda Johnson, Aguilar's attorney, gave more details regarding the CI's involvement in the sting operation. According to Ms. Johnson, it was the informant, and not the undercover officer, who negotiated the drug transaction with Mirabal and accepted the drugs from Mirabal. See Transcript of Hearing at 7:20-8:1 (taken April 27, 2010)("Tr.")(Johnson).[2] She represented to the Court that the undercover officer, although present, did not actively participate in the drug transaction. See Tr. at 8:1-3 (Johnson). Assistant United States Attorney John Anderson conceded that it was the CI, and not the undercover officer, who negotiated and carried out the drug transaction. See id. at 19:21-20:14 (Anderson).

Ms. Johnson next argued that, based on his direct involvement with the drug transaction at issue in the case, "the informant is an important witness for the defense because it would show that Mr. Aguilar was not involved . . . in the transaction at all." Id. at 6:22-7:15 (Johnson). Ms. Johnson

---

[2] The Court's citation to the transcript refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

represented that her theory of defense includes that Aguilar, although present, did not participate in the drug transaction:

> In this particular case, Your Honor, Mr. Aguilar represents that he doesn't know the informant, the informant doesn't know him. He and the informant did not have any conversations, did not have any contact, the negotiation did not take place between Mr. Aguilar and the informant. In fact, during the time that they were in the vehicle, whether the informant was picked up at the Church's Fried Chicken, Mr. Aguilar did not engage in any conversation with either the informant or Mr. Mirabal.
>
> It is our position, Your Honor, that the informant is an important witness for the defense because it would show that Mr. Aguilar was not involved in negotiating this transaction, was not involved in the transaction at all. He was present, true, but he did not participate. And with that proffer, Your Honor, I would submit to the Court that the informant's presence is not just a mere spectator, the informant actually was an active participant in this transaction, but with Mr. Mirabal, and his testimony would be critical and important to show that Mr. Aguilar was not involved.

Tr. at 6:22-7:15 (Johnson). From these statements, it appears that part of Aguilar's defense is that he was not involved in the drug transaction. He might further argue that he was unaware that the drugs were present, or that the drug transaction was going to occur, until it was too late.

Mr. Anderson conceded that Ms. Johnson has established that the CI was a participant in the criminal transaction, see id. at 21:16-24 (Anderson), but argued that Ms. Johnson has failed to articulate a theory of defense that the CI's testimony could help to establish, see id. at 22:15-23 (Anderson). Without such an articulated defense theory, Mr. Anderson argues, the United States cannot be compelled to disclose the CI's identity. In other words, the United States takes the position that there is a two-pronged test for analyzing when the United States must disclose a CI -- that the CI was a participant in the crime and that the CI could provide testimony that supports a defense theory -- and that Aguilar has failed to establish the second half of this test.

Ms. Johnson conceded that she did not, at this time, intend to call the CI as a witness. See Tr. at 9:2-17 (Court, Johnson)("THE COURT: Well, if you knew the name of this informant, . . .

do you intend to call him and get the negative information?  Is that what you would attempt to do?

MS. JOHNSON:  No, Your Honor.").  Mr. Anderson reminded the Court that the United States

likewise had no interest in calling the CI as a witness.  See id. at 27:6:12 (Anderson)("Given the fact

that the United States does not presently intend to call the CI as a witness, I think there's no basis

for requiring additional disclosure beyond Roviaro.").  Finally, the Court inquired whether

Ms. Johnson would be agreeable to making any disclosure of the CI's identity for attorney's eyes

only, at least as an initial step.  See id. at 15:4-18:5 (Court, Johnson).  Ms. Johnson agreed that a

limited disclosure -- limited to herself and a defense investigator -- would be acceptable for the time

being.  See id. at 18:6-18 (Johnson).

## LAW REGARDING THE UNITED STATES' DUTY TO DISCLOSE IN CRIMINAL CASES

In Brady v. Maryland, the Supreme Court of the United States explained that "the

suppression by the prosecution of evidence favorable to an accused upon request violates due

process where the evidence is material either to guilt or to punishment, irrespective of the good faith

or bad faith of the prosecution."  373 U.S. at 87.  In Giglio v. United States, the Supreme Court

extended the prosecution's disclosure obligation to evidence that is useful to the defense in

impeaching government witnesses, even if the evidence is not inherently exculpatory.  See 405 U.S.

at 153; Douglas v. Workman, 560 F.3d 1156, 1172-73 (10th Cir. 2009)("[N]o distinction is

recognized between evidence that exculpates a defendant and 'evidence that the defense might have

used to impeach the [State's] witnesses by showing bias and interest.'")(quoting  United States v.

Bagley, 473 U.S. 667, 676 (1985)).  Finally, the Supreme Court has refined Brady v. Maryland and

clarified that it is not necessary that a defendant request exculpatory evidence; "regardless of

request, favorable evidence is material, and constitutional error results from its suppression by the

government 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Kyles v. Whitley, 514 U.S. at 433 (quoting United States v. Bagley, 473 U.S. at 682). See Douglas v. Workman, 560 F.3d at 1172 ("The government's obligation to disclose exculpatory evidence does not turn on an accused's request."); United States v. Summers, 414 F.3d 1287, 1304 (10th Cir. 2005)("[T]he prosecution has an affirmative duty to disclose exculpatory evidence clearly supporting a claim of innocence even without request."). On the other hand, "[i]t is well settled that there is no 'affirmative duty upon the government to take action to discover information which it does not possess.'" United States v. Badonie, No. CR 03-2062 JB, 2005 WL 2312480, at *2 (D.N.M. Aug. 29, 2005)(Browning, J.). "A prosecutor does not have a duty . . . to obtain evidence from third parties." Id.

## LAW REGARDING INFORMANT'S IDENTITY

The Government has a privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Roviaro v. United States, 353 U.S. 53, 59 (1957). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." Id. "Anonymity of informants encourages communications to law enforcement officers." Usery v. Local Union 720, Laborers' Int'l Union of N. Am., AFL-CIO, 547 F.2d 25, 527 (10th Cir. 1977). See United States v. Brantley, 986 F.2d 379, 383 (10th Cir. 1993)( "Nor must the government supply the defendant with information about an informer when the individual introduces suspected traffickers to narcotics agents."); United States v. Ortiz, 804 F.2d 1161, 1166 (10th Cir. 1986)("We have ruled previously that the government is not required to supply information about

an informer to a defendant when the informer merely provides the initial introduction.").

The privilege, however, is not absolute, and where "the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Roviaro v. United States, 353 U.S. at 60-61. The Supreme Court in Roviaro v. United States stated that the desirability of calling the informant as a witness, or at least interviewing the informant in advance of trial, is a matter for the accused, rather than the government, to decide. See Roviaro v. United States, 353 U.S. at 64. When an informant is a "participant in and a material witness to" the alleged criminal transaction, the disclosure of his or her identity is sometimes required. Roviaro v. United States, 353 U.S. at 65. The standard for disclosure of confidential informants who play an active rather than passive role in the investigation is not "fixed"; rather, the court must take into "consideration: (1) the crime charged, (2) the possible defenses, (3) the possible significance of the informer's testimony, and (4) other relevant factors." Id. at 62. In Roviaro v. United States, for example, the informant "helped to set up the criminal occurrence and had played a prominent part in it . . . . [H]is testimony might have disclaimed entrapment." Id. at 64. The Supreme Court thus found that the district court's failure to order disclosure of the informant's identity "in the face of repeated demands by the accused for his disclosure" was prejudicial error. Id. at 64-65.

The Tenth Circuit's take on this analysis is well-known.

The disclosure of a confidential informant's identity involves balancing the public interest in protecting the flow of information in a manner necessary for effective law enforcement against an individual's right to prepare his defense. In making the determination as to whether disclosure is necessary, the court must consider the particular circumstances of the case, including the crime charged, the possible defenses, and the significance of the informer's testimony. Where it is clear that the informant cannot aid the defense, the government's interest in keeping secret his identity must prevail over the defendant's asserted right of disclosure. A defendant seeking disclosure has the burden of proof, and we review the district court's

-9-

decision for an abuse of discretion.

United States v. Sinclair, 109 F.3d 1527, 1538 (10th Cir. 1997)(citations and quotation marks omitted).  See United States v. McKenzie, No. CR 08-1669 JB, 2010 WL 597971, at **3-4 (D.N.M. Jan. 28, 2010)(Browning, J.)(quoting United States v. Sinclair, 109 F.3d at 1538).  "[T]he defendant must present more than mere speculation about the possible usefulness of an informant's testimony." United States v. Moralez, 908 F.2d 565, 567 (10th Cir. 1990).  In sum,

> [a] defendant may obtain the identity and whereabouts of an informer if his testimony might be relevant to the defendant's case and justice would be best served by disclosure[, but d]isclosure of an informant is not required . . . where the information sought from the informer would be merely cumulative, or where the informant did not participate in the transaction in question.

United States v. Reardon, 787 F.2d 512, 517 (10th Cir. 1986)(internal citations omitted).  See United States v. Moralez, 908 F.2d at 567.

## ANALYSIS

Aguilar seeks disclosure by the United States of the identity of the CI who assisted police in apprehending him and the co-Defendants.  He argues that the doctrine articulated in Rovario v. United States mandates such disclosure.  He also seeks substantial additional information about the CI, asserting that Kyles v. Whitley, Brady v. Maryland, and Giglio v. United States require such disclosure.  The United States resists the disclosure of the CI's identity, arguing that the CI played a nominal role in the sting operation in which the Defendants found themselves ensnared, and resists the disclosure of other information on the grounds that they do not intend to call the CI as a witness and that, to the extent the information Aguilar seeks is material exculpatory evidence in the United States' possession, it will timely make that disclosure on its own.  The Court ultimately concludes that this case is sufficiently similar to Rovario v. United States to mandate disclosure of the CI's identity in this case, but concludes that a disclosure that is restricted to Ms. Johnson's and a defense

-10-

investigator's eyes only will fulfill the United States' obligation.  The Court further finds no reasonable basis for requiring the United States to disclose additional information about the CI if neither the United States nor Aguilar intend to call the CI as a witness.

I.     **THE CI APPEARS TO HAVE PLAYED A SUBSTANTIAL ROLE IN THE STING OPERATION AND OBSERVED THE ENTIRE CRIMINAL EPISODE, AND THUS THE UNITED STATES SHOULD DISCLOSE HIS IDENTITY.**

The Court believes that, if it assumes the facts as the parties have presented them, based on the facts presently available, it can make a proper determination regarding the necessity of disclosure.[3]  Mr. Anderson conceded that the CI was "integrally involved in the criminal transaction," and that he was "someone who observed the criminal transaction . . . and was not a mere bystander."  Tr. at 21:16-22:7 (Court, Anderson).  Simply being involved in the criminal transaction, however, is not sufficient to require disclosure.  The Court must "consider[]: (1) the crime charged, (2) the possible defenses, (3) the possible significance of the informer's testimony, and (4) other relevant factors."  Roviaro v. United States, 353 U.S. at 62.  "Where it is clear that the informant cannot aid the defense, the government's interest in keeping secret his identity must prevail over the defendant's asserted right of disclosure."  United States v. Sinclair, 109 F.3d at 1538.

Taking these factors into consideration, the Court concludes that it should grant Aguilar's request and order the United States to disclosure to Aguilar's counsel the identity of the CI.  With respect to the nature of the crimes charged, the crimes charged in this case are relatively egregious -- conspiracy, possession with intent to distribute cocaine, and possessing a gun while committing the

---

[3] Mr. Anderson also stated during the hearing that he, too, believes the Court has sufficient facts before it on which to rule on the issue whether the CI needs to be disclosed.  See Tr. at 39:24-40:12 (Court, Anderson).

other crimes.  Aguilar's defense includes, at the least, that he did not actively participate in the drug transaction.  See Tr. at 6:22-7:15 (Johnson).  Although Ms. Johnson was not as clear as the Court might have liked, her statement, combined with the information she seeks, implies that Aguilar also intends to argue that he was unaware that the drug transaction was going to occur and that he did not know that Mirabal was in possession of cocaine.  The testimony of the IC could be highly significant to the United States' charges and Aguilar's defenses.  The IC was present in the car with Mirabal, Aguilar, and Garner, and would be in a unique position to testify to what conversations, if any, occurred in the car and whether Aguilar took part in them.  After the four individuals arrived at the IC's residence, again, the IC would be in a unique position to testify whether it appeared that Aguilar had any idea that the bag Mirabal retrieved from the car contained cocaine.  Once the three Defendants and the IC were inside the IC's residence, the IC was able to observe Aguilar's demeanor and whether he actively participated in the drug transaction.  The IC could testify as to where Aguilar was and what he did while the IC made the alleged drug transaction with Mirabal.

In short, the IC's testimony could be highly relevant to Aguilar's defense, and his potential testimony is not available from any other witness.  His alleged co-conspirators might try to push blame away from themselves and on to Aguilar, and Villegas, a law-enforcement officer, might tend to be biased toward the United States.  The elements stated by the Supreme Court in Roviaro v. United States weigh in favor of disclosure.  See 353 U.S. at 62.  In this case, it is not at all "clear that the informant cannot aid the defense."  United States v. Sinclair, 109 F.3d at 1538.  The Court will therefore grant Aguilar's motion and order the United States to disclose the identity of the CI to Aguilar's counsel.

The Court, however, incorporates a protective order.  Ms. Johnson is ordered that she will not disclose the identity of the CI to anyone -- except the defense investigator she retains in this case

-- unless and until she seeks further leave of the Court.  Any information that the United States provides to Ms. Johnson regarding the CI may be discussed only with the investigator and the Assistant United States Attorneys who disclosed it.  Finally, any information the United States provides must be returned once this case is closed.  These requirements should minimize the danger, if any, to the CI and perhaps permit law-enforcement to use him in a covert capacity again in the future, if they so desire.

## II.     THE COURT WILL NOT REQUIRE THE UNITED STATES TO DISCLOSE THE ADDITIONAL INFORMATION THAT AGUILAR REQUESTS.

The Court will deny the remainder of the requests Aguilar makes in his motion.  While the Court can understand why Aguilar might want extensive discovery on this potential witness, the Court finds it inappropriate to order the United States to accumulate the laundry-list of information Aguilar desires at this point in the case.  Ms. Johnson conceded that, at this time, Aguilar does not intend to call the CI as a witness.  See Tr. at 9:2-17 (Court, Johnson)("THE COURT:  Well, if you knew the name of this informant, . . . do you intend to call him and get the negative information?  Is that what you would attempt to do?  MS. JOHNSON:  No, Your Honor.").  Rather, she only wishes to interview the informant at this time.  See id.  The United States, likewise, does not intend to call the CI as a witness at trial.  See id. at 27:6:12 (Anderson)("Given the fact that the United States does not presently intend to call the CI as a witness, I think there's no basis for requiring additional disclosure beyond Roviaro.").  At this point, therefore, it does not appear that the CI will be giving any testimony if this case goes to trial.

Based on these representations, the Court concludes that the United States is not required at this time to provide any information about the CI other than his name.  Brady v. Maryland, Giglio v. United States, and Kyles v. Whitley discuss the United States' duty to produce to the Defendant

any exculpatory evidence, including impeachment evidence that the United States has regarding any prosecution witnesses.  See Brady v. Maryland, 373 U.S. at 87; Giglio v. United States, 405 U.S. at 153; Kyles v. Whitley, 514 U.S. at 433.  The Court has been given no reason to conclude that background information about the CI will be inherently exculpatory.  The Court has been given no reason to believe that the United States has failed to produce any exculpatory information in its possession.  Moreover, until the United States announces that it plans to call the CI as a witness, evidence that could be used to impeach him would not be exculpatory evidence under United States v. Giglio.  See Douglas v. Workman, 560 F.3d at 1172-73 ("[N]o distinction is recognized between evidence that exculpates a defendant and 'evidence that the defense might have used to impeach the [State's] witnesses by showing bias and interest.'")(quoting  United States v. Bagley, 473 U.S. at 676).  Because Aguilar likewise does not at this time intend to call the CI as a witness, even if the Giglio v. United States duty to provide impeachment evidence extended to defense witnesses as to whom the United States possesses impeachment evidence -- an issue the Court need not and should not decide at this time -- the United States would have no disclosure duty.  In short, there is no basis for Aguilar to request the information sought in his motion, other than the CI's identity.  The Court will therefore deny the motion to the extent that it seeks documents regarding the CI without prejudice to Aguilar re-raising that request if either party decides that they will call the CI as a witness at trial.

   **IT IS ORDERED** that Defendant David Aguilar's Motion for Disclosure of Identity of Confidential Informant is granted in part and denied in part.  The United States should disclose the identity of the confidential informant to Erlinda O. Johnson, but need not make any other disclosures at this time.  Ms. Johnson may disclose the CI's identity only to her retained defense investigator.  Those persons to whom Ms. Johnson makes a disclosure of the CI's identity should not disclose that

information to anyone else without further leave of the Court.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Gregory J. Fouratt
  United States Attorney
John C. Anderson
Nicholas Jon Ganjei
  Assistant United States Attorneys
Albuquerque, New Mexico

        Attorneys for the Plaintiff

Erlinda O. Johnson
Law Office of Erlinda Ocampo Johnson, LLC
Albuquerque, New Mexico

        Attorney for the Defendant